# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALICIA CALDERON, ET AL., Plaintiffs, - versus - ROYAL ELITE PALACE CATERERS, LLC, ET AL., Defendants | **Docket#** 21-cv-06367(EK)(MMH) |
| | U.S. Courthouse Brooklyn, New York |
| | August 10, 2022 10:14 a.m. |

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**

**For the Plaintiff:**

**Jose Cristobal Gutierrez, Esq.**
Make the Road NY
92-10 Roosevelt Ave
Jackson Heights, NY 11372

**Jillian T. Weiss, Esq.**
226 Prospect Park West, 104
Brooklyn, NY 11215

**For the Defendants:**

**Adam B. Sherman, Esq.**
Jacobs PC
595 Madison Avenue, 39th Floor
New York, NY 10022

**Emanuel Kataev, Esq.**
Milman Labuda Law Group PLLC
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042

**Transcription Service:**

**Transcriptions Plus II, Inc.**
61 Beatrice Avenue
West Islip, New York 11795
RL.Transcriptions2@gmail.com

Proceedings recorded by electronic sound-recording, transcript produced by transcription service

THE CLERK: Good morning. Civil Cause for a Telephone Initial Conference for case number 21-cv-6367, *Calderon, et al v. Royal Elite Palace Caterers LLC, et al*.

As a reminder, pursuant to Local Civil Rule 1.8, the parties may not independently record any court proceeding. A transcript of this proceeding may be ordered from the clerk's office.

That being said, counsels for plaintiff, please state your appearances.

MS. WEISS: This is Jillian Weiss for the plaintiffs. And with me also is my co-counsel, Cristobal Gutierrez. And we are requesting permission from the Court to also have our colleague, Corinna who is an attorney but is awaiting admission to the eastern district to be on the phone with us but not to participate in the conference.

THE COURT: Good morning to each of you. I'm sorry, can you say the attorney's last name again?

MS. WEISS: Svarlien. Hopefully, Karina, I said that correctly. Feel free to correct me. Should I spell it?

MR. GUTIERREZ: Your Honor, this is Cristobal Gutierrez speaking from Make the Road NY. Karina is an attorney waiting to be -- I mean she's a law graduate

waiting to be admitted. She's opened her files in New York but is yet to be admitted. She has a date for September.

THE COURT: Certainly. Thank you for that. What I was trying to do is say good morning to each of you. And welcome to the third attorney. And I just wanted to make sure the name was clear for the record because I did not hear it.

MR. GUTIERREZ: Okay. The name is Corinna, C-O-R-I-N-N-A, Svarlien, S-V-A-L-I-E-N.

THE COURT: All right. Thank you very much. We can continue with announcement of counsel. So we have counsel for plaintiff.

THE CLERK: Counsel for the Royal Elite defendants, please state your appearance.

MR. SHERMAN: This is Adam Sherman of Jacobs PC appearing on behalf of defendants Aba Cohen, Royal Elite Palace Caterers, LLC. Good morning.

THE COURT: Good morning.

THE CLERK: And counsel for the remaining individual defendants, please state your appearance.

MR. KATAEV: Good morning, everyone. This is Emanuel Kataev of Milman Labuda Law Group PLLC for individual defendants Hiaeve, Yonayev, and Katanov.

THE COURT: Good morning to you as well.

All right. This case --

MR. KATAEV: (Indiscernible).

THE COURT: Okay. Thank you, Mr. Kataev.

This case is on for an initial conference. And yes, I think that there is a little bit of interference on the line. I can't tell if it's our line or the background noise. So if you could please mute yourselves if you're not speaking, I think that would be helpful in making sure that the recording is picking up everything it needs to.

And while this case is on for an initial conference, there have been some activities in advance of -- since the complaint was filed but before the initial conference was scheduled.

Just to recap, this complaint was filed in November of 2021. The plaintiffs requested to dismiss several individual and corporate defendants from the case which I believe Judge Komitee did grant. And the remaining defendants responded in an answer in February of 2022. Excuse me, some of the remaining defendants responded in February 2022. And then individual defendants, Ms. Hiaeve, Katanov, and Yonayev answered in March of 2022.

My purpose for today's threefold. First, confirm all of the parties that remain in the case.

Second, discuss the proposed discovery plan. And then third, to discuss the possibility of settlement in this case.

Typically added initial conference I start with the plaintiffs. And if the parties wish to give me a brief overview of the legal and factual issues in the case, I'm happy to hear it. I would note that I have read the pleadings particularly because there were a number of requests made to the Court. And so I'm at least familiar with the allegations and the defendant's answers.

So I'll start with counsel for plaintiffs, any of you who wish to be heard, and then I'll turn to counsel for what I'll call the Royal Elite defendants, and then counsel for the remaining defendants.

MS. WEISS: Good morning, your Honor. This is Jillian Weiss for the plaintiff. I'm happy to give you a rundown of the case but as you mentioned, you've read all the pleadings. I mean I guess I would just say generally that we're dealing here with discrimination based on gender identity and labor law violations involving overtime and spread of hours pay as well as a few minor other claims regarding training required by New York City Law as well as notices and fact sheets that were supposed to have been given.

You know, essentially, just to put it in a nutshell, Ms. Calderon's job was cooking, carrying large pots, platters, boxes, industrial slicing machines, cleaning. She was called an excellent employee. We spent paragraphs 68 through 196 of our complaint detailing the gender-based abuse after she transitioned in January of '17. And when I say transitioned, I mean gender transition.

Mr. Zoriev (phonetic), who was her supervisor, cautioned her and told her that workers were discussing her transition negatively. There was an employee there, Jose Ariza (phonetic), who made a lot of comments which were very ugly, encourage others to mock her, asked about her clothing, and really laughing it up at her expense to the point where she had to wear headphones at work at which point Mr. Arisa brought himself and his face inches away from her and made very loud and rude comments. This escalated to throwing bottles --

THE COURT: All right. Ms. Weiss, let me just interrupt you. So I understand that you of course are very, very committed to your client and to this case, but what I don't want to have is a repetition of the complaint because I remember these allegations in the complaint.

So as mentioned, if there's anything you wanted

to bring to my specific attention that hasn't already been mentioned in the pleading, please do so. If not, I'm going to turn to the next counsel in turn.

MS. WEISS: Thanks, your Honor. Nothing further.

THE COURT: Mr. Sherman?

MR. SHERMAN: Yes, your Honor. Our office represents defendant Aba Cohen and Royal Elite Caterers, LLC.

We're denying the allegations. As indicated on our proposed discovery order, I'd just like to mention that we remain open to settlement including, you know, a conference or --

THE COURT: I'm sorry, did you say you remain open to settlement? I think that today's conference line overall has been having some dips, so --

MR. SHERMAN: Yeah. Yes, yes.

THE COURT: -- I think you said you remain open to settlement but I couldn't hear that part.

MR. SHERMAN: Yes. Yes, Your Honor. That is what I said. As we indicated in our proposed settlement plan as well as a mediation pursuant to the eastern district's local rules.

THE COURT: All right. Thank you. Mr. Kataev?

MR. KATAEV: Yes, your Honor. There are many

concerns I'd like to address and I'll hold off on discussing our issues with respect to settlement until we get to the third portion of your agenda. With respect to issues that I'd like to address on the litigation front, first, everyone has been sued in this case except the actual people who committed all the I guess violations fo the law. For various reasons, Mr. Ariza is not a defendant in this case even though he could be held liable. Despite the fact that the allegation is ostensibly about an individual being Shalome (phonetic) who could be held liable as an individual employee, he's also not named as a defendant in this case and that's also very curious.

I can represent to you, your Honor, that this catering hall, which is now closed by the way at least with respect to these owners, my three clients are each 25 percent members of the LLC. They are corporate officers, members. They did not have any involvement with these employees. In fact, the chef, Shalome, was sort of the chef in the kitchen both with respect to their employment and with respect to actually cooking the food. (Inaudible, audio cut out) employees. He hired them, he fired them, he decided how much they got paid, et cetera, et cetera, et cetera. There's no individual liability for my three clients. So I am looking to write

a letter motion for a pre-motion conference to Judge Gonzalez. We could set a deadline for that today. And the motion will be based on a motion for a judgment on the pleadings under Rule 12(c). And I believe I'll also be moving under Rule 19 for failure to include an indispensable party and that would include Mr. Shalome.

We're also speaking with the client. It's hard to get all three of them on the phone at the same time. One of the individuals that was dismissed, Mr. Igor Tsan, my understanding is that he was sort of an event coordinator and he dealt with customers in terms of bringing them in for the banquet and along those lines. It's my understanding that he played a role at times with respect to indicia of individual employment, individual employers. And so we may be able to do a third party complaint to bring him in. But I haven't investigated that sufficiently enough in order to determine whether we're going to take that step, but that may be a possibility. So I'm just giving the Court and the parties notice ahead of time.

Those are the concerns I have with respect to the litigation. I don't believe that the complaint sufficiently states the claim for which relief can be granted against the individual defendants at least. I do believe that it states a claim against Mr. Ariza under

aider and abettor liability and against Mr. Shalome, the chef, who hasn't been named as defendants, but that'll be fleshed out in motion practice if we don't settle.

I'll reserve my comments about settlement until we reach the third portion of your agenda, your Honor.

THE COURT: Okay. Thank you. And because the line was breaking up, I believe that the party that you mentioned who had previously been dismissed is Igor Tsan, T-S-A-N. Is that the name that I heard?

MR. KATAEV: That's correct, your Honor.

THE COURT: Okay. Thank you. All right. And I think you said a Rule 12(c) as in cat and a Rule 19 motion is anticipated.

And I would note that this case is, I think you said Judge Gonzalez, but I believe that this case is assigned to Judge Komitee. So you would need to look at his individual rules with respect to letters for a pre-motion conference.

All right. Thank you for all of that from each of you. And just going back to Ms. Weiss, let me just look here. I did have a question as to given that several of the defendants are no longer in the case, does that narrow the relevant time frame as alleged, and the claims in the complaint? Because in reading through, I reread the complaint in advance of this conference and

there were a number of paragraphs in the complaint that involved defendants that are no longer in the case and I just wanted to know if that perhaps narrowed the time frame for the allegations here.

MS. WEISS: Well, your Honor, we are planning on bringing the motion to amend to address the fact that some defendants have been dismissed. I would say it does not vary the timeline because the plaintiff is alleging successor liability to the previous corporation, Elite Palace, LLC. And while they're no longer a direct defendant, the question is going to be whether Royal Elite Palace Caterers, LLC was a successor and would have successor liability.

THE COURT: Okay. All right. Thank you for clarifying that.

So it appears as though the parties are -- and I was also asking for the purposes of discovery because -- let me just move to this proposed discovery plan. And I only have a couple of questions about the proposed discovery plan. The first one is -- actually, no, that's not a question I have. Well, I'll get to settlement in just a minute. Let's see. Just going to Page 2 of the proposed plan which was submitted at document 48 on August 3rd, the parties have here a pretty significant gap between the completion of all discovery

and then the joint status report certifying the close of all discovery. Is there any expert discovery anticipated?

MS. WEISS: This is Jillian Weiss. There's no expert testimony anticipated.

THE COURT: All right. Okay. I think perhaps to simplify things, perhaps then we'll just move the date of the fact and all discovery to January because then there would be a shorter window between the end of discovery and the report certifying the close of discovery. So I'm going to move the end of fact discovery to January 21st and then your status report certifying the close. I'm just going to move it to about a week later because at that point you should know what's done and what isn't. All the other dates can remain the same. And that's with respect to discovery. Any questions about that?

MR. KATAEV: None from the individual defendants.

THE COURT: All right. Hearing none, let me move on to settlement. Now interestingly, in your plan it is stated as contested as to whether or not plaintiff will make a settlement demand. I'm not even sure who to ask what this means. So why don't I start with counsel for plaintiff?

MS. WEISS: Okay, your Honor. We had made demands to defendant based on our calculations of damages in our 26(a) statement. Defendants felt that we should make an offer lower than that because otherwise they would not consider it a compromise. We did offer a lower number --

THE COURT: I'm sorry, Ms. Weiss. I'm sorry, the line cut off. The defendants thought that you should make a lower offer because they would not --

MS. WEISS: Because otherwise it would not be a compromise. In other words, they're saying if you're demanding all the damages you think you can get at trial, then it's not a settlement offer. It really should be lower.

So in the spirit of compromise, we did offer a reduced sum but noted that it would not include attorneys fees and costs because obviously that's not something we can calculate at the moment and a lot would depend on when the settlement were actually effectuated as it were. The defendants, or at least one defendant, felt that this was not really a true offer because it did not offer to settle everything. And I noted to defendant's counsel that they're free to make a counter offer that's inclusive of all of those, but we did not want to at this point box Ms. Calderon in with regard to something that

we don't really know about yet.

THE COURT: Okay.

MR. KATAEV: May I be heard?

THE COURT: Who's that? Mr. Sherman?

MR. KATAEV: No, it's Mr. Kataev.

THE COURT: Oh, Mr. Kataev. Okay. You can but before we get too in the weeds on this, number one, please do not give me any numbers. And number two, just note that at the end of this I will return to the concept of setting a date for a formal good faith written settlement demand and counter offer. But go ahead, Mr. Kataev.

MR. KATAEV: Sure. So I wouldn't say it's entirely accurate that we had a problem with the number per se. I mean part of the settlement negotiation and we don't have any legal dispute with respect to that. The issue is with respect to providing a settlement demand exclusive of attorneys fees and cost is twofold.

Number one, on a practical level, it's hard to advise my client about the prospect of settlement and what the actual true value of the case is in terms of (inaudible, audio cut out) without knowing the full amount of the demand. And so it's hard for me to counter to that without understanding it.

On the legal basis, with respect to the legal

authority, Rule 26 requires itemization and categorization of each set of damages sought together with a computation of the amount. Now I recognize that it's uncertain as to when this will end and that attorneys fees continue to accrue, but that does not stop the plaintiff's counsel from providing a computation as required under Rule 26(a). Plaintiff's counsel should in their Rule 26 disclosures separate and apart from settlement provide what their hourly rates are and how many hours they've expended on the case thus far (inaudible, audio cut out) the computation, and with that make a settlement demand that's inclusive of attorneys fees and costs with the proviso that obviously those fees are continuing to increase assuming they prevail.

So that's our problem with respect to settlement. That's what the dispute is about. We believe that we should receive a global number inclusive of (inaudible, audio cut out) so that we can properly respond to it and properly advise our clients as to the nature of the demands.

THE COURT: Okay. Thank you, Mr. Kataev.

So here's what I will say about settlement. It's relative early days in the case. There is clearly some disagreement about some major factual and legal issues. The parties still are discussing the word

settlement which to me means that it is still within the realm of possibility. Without me inserting myself into settlement discussions in advance of the settlement conference, I would say that if I were having a settlement conference with all of you, and I see that there's a date here set for one, and yes, I would expect that any offers would be inclusive of everything because otherwise it is clearly difficult to then go back and agree on a number and then note that the number has to be some percentage higher due to other costs or fees. So from a negotiation standpoint, yes.

I also agree that if the initial demand, and this is what I advise parties all the time, if the initial demand is whatever it is you think you're going to get in a judgment after a trial, then that's not a settlement. It's a backtrack to a trial judgment. And again, it sounds like there has been good faith efforts to compromise, which is the point of the settlement, but it also sounds like there's maybe a little work to be done in terms of understanding the particulars of the case, getting a little bit of discovery done, and then having the settlement conference perhaps not after the close of -- not close to the end of discovery, but after there's been at least written discovery in the case.

All right. With that said, I also see here a

date for the mediation program and I think, Mr. Sherman, this is what you had alluded to earlier.

MR. SHERMAN: Yes.

THE COURT: But if the parties --

MR. SHERMAN: But I would like to make one comment.

THE COURT: Go ahead.

MR. SHERMAN: Sorry. I would like to make one comment with respect to the proposed discovery plan. I see that there's no box for medical records authorization from the plaintiff. I think second though we do need a date for that because the plaintiff is alleging emotional distress damages.

MR. KATAEV: I join in that.

THE COURT: Well, that was what I asked about expert discovery because it wasn't clear to me if there was a request. If the damages are anticipated to include emotional distress, I didn't know if there were any providers or experts that would want to opine on that. Ms. Weiss?

MS. WEISS: Your Honor, this is a garden-variety emotional distress case. We are not planning on having a therapist or experts testify. We're not planning on introducing medical records. And so in a case of that nature, we don't think that medical records

are necessary.

That being said, if they want to request or send us an authorization, we certainly will consider it.

THE COURT: All right. Well, I think, Ms. Weiss, that is something that you and your team need to go back to your client and carefully consider because at the point where one of the requests for relief is damages on the basis of emotional distress, I think as a matter of discovery the defendants are likely entitled to have information on other than your client's testimony regarding for emotional distress. I don't know that it's going to carry the day with just that. So that may be something that you and your team think about and then confer with your adversaries about that.

I would also like to note that while this is an initial conference, I realize that there are a number of issues contested. What we're not going to have in this case is a lot of unnecessary motion practice when it comes to discovery. I fully expect and anticipate that counsel will meet and confer in good faith in an attempt to resolve disputes before bringing them to the Court and that they will have discussions about issues before any scheduled court appearances in order to streamline the issues that have been presented to the Court.

Having said that, again, the purpose of the

medical records authorization being here on the plan was for you all to discuss this. So it sounds like it's an issue that needs to be discussed and I'm going to direct you all to discuss it. If you can't resolve it, then let me know.

All right. For the purposes of so ordering this plan, as I mentioned, the end of fact discovery will be January 21, 2023 as will be the end of all discovery. The joint status report certifying the close of fact discovery will be due one week later on January 28th. Actually January 21st and January 28th are Saturdays. So January 19th, which is a Thursday, and then January 26th are the two dates. All other dates will remain the same with the exception of the settlement conference date. What I will do is I revisit settlement at every opportunity whether it's in a written status report or in a status conference. I will revisit the potential for a settlement conference and if the parties would like to schedule one, then I'm always amenable to doing that.

With respect to the referral to the EDNY mediation program, it is still unclear to me after this discussion whether you wish to have that referral done right now. It sounds to me like there may need to be a little bit of discovery before mediation. So if you could please let me know whether you want the referral

now, I can put it loose. If not, this can be revisited a little later in the case after there's been some discovery.

MR. KATAEV: It's Mr. Kataev speaking. I request a referral to mediation.

THE COURT: I'm sorry, was that Mr. Sherman?

MR. KATAEV: No, it's Mr. Kataev. Sorry.

MR. SHERMAN: This is Mr. Sherman. I join in that request.

THE COURT: All right. Ms. Weiss?

MS. WEISS: The only concern that I have is that we have been meeting and conferring with one set of defendants' counsel and we have not received the information that we believe we're clearly entitled to which I think is important. And there is a short window on discovery in this case. So I do think we need some more information. We may be forced to bring a motion to compel as much as we don't want to. And I think if we go into mediation at the moment, there's just not enough for the defendant to see to be convinced that their clients have liability. So I would vote for waiting a bit. Not too long necessarily, but you know, enough for us to get at least some of the information we need.

THE COURT: Okay.

MR. KATAEV: Your Honor --

THE COURT: Have you all exchanged your -- you have exchanged your Rule 26 (a)(1) disclosures?

MS. WEISS: Not all.

THE COURT: Okay. Perhaps that may settle it. But who was it who just your Honor and wanted to chime in?

MR. KATAEV: This is Mr. Kataev speaking. I'm the party who hasn't done the Rule 26 disclosures yet. That will be done by August 15th as set forth in the discovery plan. I would suggest that --

THE COURT: Ideally, again, this whole section is entitled actions required before the initial conference. So I understand it will be done in short order, but the purpose of this was so this could be done before we got here today. And it may well address the concern that Ms. Weiss is raising. Is there something else you wanted to add, Mr. Kataev?

MR. KATAEV: Yes. With respect to mediation versus discovery, I think they're not mutually exclusive. I also think that the number of parties, it's going to take time for everyone and their parties, you know, all counsel and the mediator to get a mediation schedule. So I would just suggest that the mediation referral were to go out, we proceed with discovery according to schedule, and we schedule a mediation in the time after responses

are due assuming that everyone's available right away. And that way we can kill two birds and not have one holding up the other.

THE COURT: All right. We'll here's what I'm going to do. And I agree that there is some discovery that needs to happen in advance of mediation. I typically put a 60 day window on mediation because I think it forces the parties to get very focused very quickly on the relevant discovery that needs to be exchanged in advance because I require that to be exchanged within 30 days of the discovery referral order.

So another alternative is to make this a 90-day window. You may then have 45 days to complete any sort of initial discovery that I think is required for the purposes of a fruitful mediation session. And then if it is successful, then fine. If not, that you can come back and you still have your discovery order for the remainder of discovery which, by the way, I just extended. So I am happy to do that instead which is to put in the referral order and put it on a 90-day schedule and give you all a little extra time to do at minimum your Rule 26(a) disclosures and perhaps your initial document request and interrogatories which should provide sufficient information to have a productive mediation session.

MS. WEISS: Your Honor, this is Julian Weiss --

THE COURT: Any questions about that? Yes.

MS. WEISS: No question, but I just wanted to say that plaintiff would be fine with a 60-day order because that would bring us to October and I'm pretty sure we'll have everything complete by then.

THE COURT: All right. That's fine. Then it sounds like it's the date that you all have in your plan in which case we'll go from there.

Okay. So before -- what I'm going to do, the only part of this, the only other part of this plan that I will change is the settlement conference date. Again, we will revisit that. If your mediation is successful, that won't even -- the settlement conference will become moot. If not, then we will reconvene and figure out a date that works for everyone.

Is there anything else that needed to be raised on behalf of plaintiffs today?

MS. WEISS: No, your Honor. Nothing further.

THE COURT: All right. Thank you. On behalf of the Royal Elite defendants?

MR. SHERMAN: No, your Honor. Thank you.

THE COURT: All right. And on behalf of defendants Hiaeve, Katanov, and Yonayev?

MR. KATAEV: Two brief things, your Honor. This is Mr. Kataev. An earlier discussion about a

medical expert and emotional distress damages, I just wanted to point out that while we are obtaining authorizations at this point that that doesn't mean that defendants will want to use a medical expert down the line. But we do believe it's necessary discovery to quantify the emotional distress damages in any way possible.

And then second, there was discussion about plaintiff seeking leave to amend the complaint. And I just wanted to suggest that since I intend on making a motion for (inaudible, audio cut out) that perhaps it will be prudent for me to first file the letter motion and then give plaintiff the opportunity at least to amend both with respect (inaudible, audio cut out) that are gone and with respect to the deficiencies that I point out that they may want to cure.

THE COURT: Well look, your motion, Mr. Kataev -- a fair point regarding a potential for amendment. I do note here in looking at this order, I realize that the motion to amend the pleadings or join new parties is in 21 days. So for the plaintiff and his wife, is that sufficient time?

MS. WEISS: It is, your Honor. The motion has been prepared. We're just putting the final touches on it.

THE COURT: Okay. While Mr. Kataev -- again, you're welcome to file your motion. I suspect that if the complaint gets amended, I can't speak for Judge Komitee, but it may be the case that he directs you to address your motion to any amended complaint. But I will just note in the minute entry for this that there are anticipated motions to amend the pleading and the motions that you mentioned, Mr. Kataev. And so Judge Komitee will be aware.

MR. KATAEV: Understood. I'm just looking at Judge Komitee's rules (inaudible, audio cut out) motion. What I'll do is I'll work on maybe getting it out before the end of next week and (inaudible, audio cut out) further amend the (inaudible, audio cut out). I just want to avoid having (inaudible, audio cut out) unnecessary.

THE COURT: Well again, that is your litigation prerogative. I'm just telling you as a matter of practicality if the amended complaint is forthcoming, perhaps that's the document to which you should address your motion.

MR. KATAEV: Understood.

THE COURT: All right. With that, we are adjourned. I appreciate all of your patience as we get through the issues with this conference line. I hope

that the record could be clear by at times repeating what you had said to me just to make sure that we captured everything.

The only other thing that I would like to do is actually to set a status conference which I had forgotten, or a date for a status report. Excuse me. And let me just look at the calendar. Well, I typically ask for a status report after mediation anyway. So why don't we just make your status report due on November 7th. And it's a joint status report. It should not be longer than three pages. I doubt that you will need three pages but it is essentially a status report to apprise me on certainly the outcome of mediation if the case settles. You don't have to wait to November 7th to tell me that. But assuming you're filing a status report, the status of discovery at that point, whether there are any issues that you wanted to raise, and again, this is a three-page letter so it's just flagging for me that there may be an issue. It's not an all out motion.

And again, the progress on any settlement conversations even if the mediation is unsuccessful. Again, I don't want numbers, I don't want specifics about terms. I just need to know that you've had the discussions and whether or not they have made any progress. All right? Any questions about the status

report?

MR. SHERMAN: No, your Honor. This is Adam Sherman.

THE COURT: All right. Thank you. With that, then this initial conference is adjourned and I wish all of you a good rest of your summer. And I hope that you and your family continue to remain safe.

MS. WEISS: Thank you, your Honor.

MR. SHERMAN: Thank you, your Honor.

MR. KATAEV: Thank you, your Honor.

(Matter concluded)

-oOo-

**C E R T I F I C A T E**

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **26th** day of **September**, 2022.

Mary Greco

Transcriptions Plus II, Inc.