May 3, 2023

**VIA ECF**
Hon. Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 504N
Brooklyn, New York 11201

**Re: Alicia Calderon v. Royal Elite Palace Caterers LLC et al., 21-cv-6367 (E.D.N.Y.) (EK) (MMH)**

Dear Judge Henry:

Make the Road New York ("MRNY") along with the Law Office of Jillian Weiss P.C. represent plaintiff Alicia Calderon ("Plaintiff" or "Ms. Calderon") in the above-referenced case, which includes claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") as well as Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). On behalf of all parties, we jointly write to respectfully request this Court's approval of the Settlement Agreement, attached as Exhibit 1, regarding Plaintiff's wage and hour claims[1].

On November 14, 2022, the Parties participated in a mediation that resulted in the Parties reaching a settlement in principle on November 18, 2022. The parties agreed to enter into a separate agreement, to be filed under seal, to resolve the discrimination claims. The agreement settling claims of discrimination is being filed under seal due to a confidentiality provision contained in the agreement, and it is Plaintiff's preference – in accordance with New York General Obligations Law § 5-336 and New York State Civil Practice Law and Rules § 5003-b – that the agreement be confidential. Subsequently, on February 1, 2023, the National Labor Relations Board ("NLRB") issued a decision in *McLaren Macomb*, finding that broad

[1] A previous filing of this letter was done by the signatory attorney without the proper signature.

confidentiality and non-disparagement clauses in settlement agreements between employers and employees "interfere with, retrain, or coerce employees' exercise of Section 7 rights" *McLaren Macomb*, 372 NLRB No. 58 (2023), 7. Additionally, the Board stated that "[a] severance agreement is unlawful if it precludes an employee from assisting their coworkers with workplace justice issues concerning their employer, and from communicating with others, including a union, and the Board, about his employment." *Id.* at 9. The Board issued a subsequent memo clarifying the impacts of the decision and making it clear that "the proffer [of broad confidentiality and non-disparagement clauses] itself inherently coerces employees by conditioning severance benefits on the waiver of statutory rights such as the right to engage in future protected concerted activities and the right to file or assist in the investigation and prosecution of charges with the Board." Mem. GC 23-5, 3 NLRB (2023).

Counsel for Plaintiff raised this issue with all counsel in an email on April 14, 2023. Counsel for Defendants declined to modify the agreement to remove the confidentiality clause. In order to avoid further delay, we are submitting the executed agreements with the confidentiality clause included for the court's review. Plaintiffs respectfully submit that *McLaren Macomb* is applicable to this settlement agreement at issue and interferes with Plaintiff's Section 7 rights pursuant to the National Labor Relations Act.[2]

Defendants respectfully submit that the NLRB's decision does not control here, where the employee no longer works for the Defendants since in or about 2019 (nearly four years ago), whose catering hall has long ago been shut down following the post-pandemic pandemonium, and no severance benefits are offered here, as the parties have come to a confidential settlement to avoid the risks, uncertainty, and vexation of litigation. Further, the NLRB decision deals with union employers and the Plaintiff here was never part of any union. Accordingly, the decision in *McLaren Macomb* should serve as no bar to a confidentiality provision, especially because New York law provides for and permits such a provision, *and Plaintiff has signed a separate document stating that it is her preference for the terms to be kept confidential*.

**Plaintiff's Allegations**

Plaintiff alleges that from the summer of 2013 until the summer of 2019, defendants Royal Elite Palace Caterers LLC, Alexandra Hiaeve, Aba Cohen, Roben Katanov, and Yuri Yonayev and their predecessors employed her as a cook in Woodside, New York. (ECF Doc. No. 56) ("Am. Compl.") ¶¶ 17, 43. Ms. Calderon alleges that from the start of her employment until the beginning of 2019, she worked six days a week between ten to twelve hours a day, for as many as seventy hours a week. Am. Compl. ¶ 186. Plaintiff alleges that for approximately the last six months of her employment, her hours were reduced to approximately forty-five to fifty-five hours a week. Am. Compl. ¶ 187. Ms. Calderon alleges that when she was hired she was paid one hundred dollars ($100) a day, which was increased at the beginning of 2015 to one hundred and twenty dollar ($120) a day, and then increased again to one hundred and fifty dollars ($150) at the beginning of 2018. Am. Compl. ¶ 188.

Ms. Calderon alleges that she regularly worked over forty hours a week and until 2019 worked shifts that lasted more than ten hours a day, but was never paid wages at the correct overtime premium or received spread of hours pay. Am. Compl. ¶¶ 189, 191.

**Defendants' Defenses**

---

[2] Plaintiffs reserve the right to provide briefing on this matter should the Court deem it necessary.

Defendants respectfully submit that the records in their possession that have been provided to Plaintiff rebut that Plaintiff did not work anywhere near the number of hours she alleges to have worked in her complaint. Defendants also respectfully submit that Plaintiff was paid on an hourly basis. Further, Defendants submit that there is no evidence whatsoever that Alexandra Hiaeve, Aba Cohen, Roben Katanov, and Yuri Yonayev were Plaintiff's individual employers under the FLSA nor NYLL as none of them hired, fired, managed, supervised, nor set the schedule or wages of the Plaintiff. Accordingly, although Defendants are not in possession of contemporaneous time records and wage records for all remuneration paid to Plaintiff, Defendants respectfully submit that, based on the evidence that is in their possession, Plaintiff is not entitled to more than $10,000.00 on her wage claim should she have litigated it to verdict.

**Background and Procedural History**

On November 27, 2019, Ms. Calderon filed a claim for unpaid wages with the New York State Department of Labor ("NYSDOL") and received a Notice of Complaint Received on December 30, 2019. Am. Compl. ¶¶ 29, 30. Ms. Calderon commenced this action on November 16, 2021. (ECF Doc. No. 1) ("Compl."). On November 14, 2022 the parties participated in mediation and on November 18, 2022, the parties reached a preliminary agreement on a settlement amount for the wage and hour and discrimination claims. Defendants have agreed to pay Ms. Calderon $17,302.83 to settle her wage and hour claims under the FLSA and NYLL. Ex. 1 ¶ 2.

**Reasonableness of the Settlement Agreement**

The final settlement agreement, attached as Exhibit 1, having been executed by all parties, is submitted by the parties for the Court's approval as fair and reasonable. *See Cheeks v. Freeport Pancake House*, 769 F.3d 199 (2d Cir. 2015). A copy of the agreement translated into Spanish is attached as Exhibit 2. The Parties will submit a separate agreement under seal, as directed in this Court's April 17, 2023 Order, for the Court's review, settling Ms. Calderon's allegations of discrimination. (Text Only Order Dated April 17, 2023).

In determining whether the settlement agreement is fair and reasonable, courts consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the party; (4) whether the settlement agreement in the product of arms-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

Possible Range of Recovery

Under the terms of the Settlement Agreement, Defendants will pay Ms. Calderon a total of $17,302.83 within 30 days of the Court's approval of the settlement agreement. Ex. 1 ¶2(a)(i). This amount is fair and reasonable considering Ms. Calderon faces a large range of possible recovery. At the upper limit of exposure, defendants could be held liable for up to $137,937.77 for unpaid wages, liquidated damages, and record keeping violations, which – as Defendants submit above – would be incongruous to the records provided rebutting that Plaintiff did not work as many hours as she claims to have worked. This calculation is based on Ms. Calderon's estimate that she worked: 1- from her hiring in the summer of 2013 to December 2018, six days a week for sixty-nine (69) hours a week; and 2- from January 2019 until she was fired in

June 2019, six days a week for fifty-one (51) hours a week. Am. Compl. ¶ 185-87. Ms. Calderon alleges she was paid a flat weekly rate that did not meet State minimum wage requirements, nor did it include overtime premium or spread of hours pay. Am. Compl. ¶ 188-91. A copy of Plaintiff's damages calculations is attached as Exhibit 3. However, pursuant to Defendants' damage calculations, she would be entitled to no more than $15,000.00.

<u>Avoiding the burdens, costs, and risks of litigation</u>

Ms. Calderon faces significant risks in litigation. Defendants have submitted some records showing that Ms. Calderon worked fewer hours than alleged in her complaint and was paid additional wages for weeks in which she worked extra hours. Defendants provided a sampling of these documents to Ms. Calderon during mediation. This is a case where there is disagreement over the basic fact of number of hours worked, which creates a high level of uncertainty for Ms. Calderon's recovery. *Yunganaula v. D.P. Group General Contractors/Developers Inc.*, 2023 WL 2707024 at *5 (E.D.N.Y. Mar. 30, 2023)(Found a settlement for 28% of net total alleged compensatory damages was reasonable given the serious risks of litigation in a case where there was disagreement over the number of hours worked); *Sanchez v. DPC New York Inc.*, 381 F.Supp.3d 245, 250 (S.D.N.Y. 2019)(Finding a settlement of 19% of possible recovery reasonable given the significant litigation risks).

Defendants' time and pay records could significantly reduce Ms. Calderon's recovery if a jury were to credit the documents. Given these factual risks, the settlement amount is not unreasonable, as courts have approved similar settlement amounts of approximately 12% of possible recovery where similar risks were present. *See Zorn-Hill v. A2B Taxi LLC*, 2020 WL 5578357 at *4-5 (S.D.N.Y, Sept. 17, 2020) (approving a settlement of 12.5% where there were significant factual disagreements); *Gervacio v. ARJ Laundry Services Inc,* 2019 WL 330631 at *1 (S.D.N.Y. Jan. 25, 2019) (approving a settlement agreement of 20% of potential recovery).

Additionally, Royal Elite Palace Caterers LLC was dissolved on or about December 7, 2020 and has no successors, which may create a challenge for Ms. Calderon in collecting any judgment awarded at a trial, as the individual Defendants are not capable of paying a large judgment. These factors weigh in favor of the proposed settlement amount being a reasonable compromise. *See e.g. Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 3392870 at *2 (S.D.N.Y. Jul. 12, 2018) ("Obstacles to collection may justify a reasonable settlement for an amount less than the maximum amount Plaintiffs might have recovered otherwise.")(Citing *Lligiochuzhca v. Cinema 60, LLC*, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013).

In addition to permitting the parties to avoid uncertain recovery, the settlement agreement permits the parties "avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Oxley v. Excellent Home care services, LLC*, 2020 WL 589581, at *1-2 (E.D.N.Y. Jan. 8, 2020).Before the settlement agreement was reached, both parties had outstanding motions to compel and Defendants indicated that they were preparing to file a motion to dismiss. *See* Letter Motion (ECF. Doc. No. 60); Motion to Compel (ECF Doc. No. 63); Motion to Compel (ECF Doc. No. 64). Briefing these motions and completing discovery would be costly to Defendants, potentially create a barrier to *any* recovery for Plaintiff, and the settlement agreement therefore permits a mutually amenable closure to this case, with a reasonable recovery for the Plaintiff in light of the facts present here. *Lligiochuzhca* at 365. (Settlement reasonable given "plaintiffs' legitimate concerns about the collectability of any judgment against the defendants.")

The settlement agreement also allows Ms. Calderon to avoid burdensome and difficult discovery, including depositions, in which Ms. Calderon would have her allegations challenged, including her allegations of discrimination. In light of the extensive discovery that would have to take place if this case proceeded to trial, the certain recovery of this Settlement Agreement represents a reasonable resolution of Ms. Calderon's claims. *See e.g. Chowdry v. Brioni America, Inc.*, 2017 WL 5953171 at *3 (S.D.N.Y. Nov. 29, 2017) ("[T]he settlement will entirely avoid the burden, expense and aggravation of litigation. No depositions have taken place yet. If the case were to proceed, several depositions would need to be taken. The settlement avoids the necessity of conducting this discovery.")

Agreement is the result of adversarial litigation and arm's-length bargaining

The settlement agreement is the result of adversarial litigation and arm's-length bargaining between experienced counsel. *Lligiochuzhca* at 366. ("[C]ourts typically regard the adversarial nature if a litigated FLSA case to be an adequate indicator of the fairness of a settlement.")(Quoting *Aponte v. Comprehensive Health Mgmt.,Inc.*, 2013 WL 1364147, at *4 (S.D.N.Y. Apr. 2, 2013). All parties are represented by experienced counsel and have exchanged discovery, participated in mediation with a qualified mediator on November 14, 2022, and had further settlement discussions before reaching this agreement. *See* Discovery Plan (ECF Doc. No. 49); Joint Status Report (ECF Doc. No. 72). Because Ms. Calderon is no longer employed by Defendants, there is little to no risk of coercion being exerted against her to sign this agreement. *See Straus v. Little Fish Corporation*, 2020 WL 4041511 at *4 (S.D.N.Y. Jul. 17, 2020) ("[B]ecause Plaintiff is no longer employed by Defendants, the risk of coercion—a concern in other cases—is minimal to non-existent.") This factor thus weighs in favor of finding the agreement to be fair and reasonable.

Other Factors

Other factors that the Court may consider in reviewing the Settlement Agreement's reasonableness include "(1) 'the presence of other employees situated similarly to the claimant'; (2) 'a likelihood that the claimant's circumstance will recur'; (3) 'a history of FLSA non-compliance by the same employer or others in the same industry or geographic region'; and (4) the desirability of 'a mature record' and 'a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.'" *Wolinsky v Scholastic Inc.,* 900 F Supp 2d 332, 336 [SDNY 2012] [quoting *Dees v Hydradry, Inc*., 706 F Supp 2d 1227, 1234 [MD Fla 2010]]. The corporation has been dissolved and the claims made by Plaintiff are not a novel treatment of the law, therefore the analysis of these considerations should be considered moot. Moreover, Defendants state that there is no history of FLSA non-compliance by the same employer. These other factors thus militate in favor of approving the settlement as fair and reasonable.

Attorney's fees

It is typical for courts to review attorney's fees as part of the court's review of an agreement's reasonableness. *Caceres v. Brentwood Farmers Mkt., Inc.*, 2021 WL 3276637, at *2 (E.D.N.Y. May 4, 2021).

In this case, MRNY would be the only law office collecting attorney's fees for representation of Ms. Calderon's wage and hour claims. MRNY will waive the fees it earned through its retainer and co-counsel

agreement with Ms. Calderon and the Law Office of Jillian Weis, P.C. and release those fees to Ms. Calderon.[3]

Mutual General Release

Further, the parties' inclusion of a mutual general release serves as no bar to approval. Whereas here, the Plaintiff is no longer employed by any of the Defendants, courts have routinely found agreements with such provisions fair and reasonable pursuant to *Cheeks. See, e.g., Chun Lan Guan v. Long Is. Bus. Institute, Inc.*, No. 15-CIV.-2215 (CBA) (VMS), 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (Amon, J.) ("there is nothing inherently unfair about a release of claims in an FLSA settlement" and finding that the mutual releases of claims in the Settlement Agreements are fair and reasonable, and do not run afoul of the FLSA's purpose of preventing abuse by employers upon applying the *Wolinsky* factors); *Burgos v. Northeast Logistics, Inc.*, No. 15-CIV.-6840 (CLP), 2018 WL 2376481, at *6 (E.D.N.Y. Apr. 26, 2018), report and recommendation adopted, No. 15-CIV.-6840 (CBA), 2018 WL 2376300 (E.D.N.Y. May 24, 2018) (finding that the release satisfies the two conditions under which some courts typically approve of mutual general releases, but requiring parties to revisit an aspect of the release which is asymmetrical in order to receive approval); *see also Grullon v. Justin Pharmacy Inc.*, No. 1:20-CIV.-6122 (OTW), 2021 WL 76386, at *3 (S.D.N.Y. Jan. 8, 2021) (when the plaintiff is a former employee with no ongoing relationship with the employer, courts in this District have approved a general release, if the release is mutual) (*citing Strauss v. Little Fish Corp*., No. 1:19-CIV.-10158 (LJL), 2020 WL 4041511, at *5-6 (S.D.N.Y. July 17, 2020) ("Such a broad mutual general release operates as a walk away provision: it permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit.") (citing cases)); *Small v. Stellar Mgmt. Ltd*., No. 1:20-CIV.-2540 (SDA), 2020 WL 7890748, at *1 (S.D.N.Y. Oct. 21, 2020) ("In the present case, the Court finds that mutual general releases are acceptable because Plaintiff no longer works for Defendant; Plaintiff was represented by experienced counsel; and the release, although it extends to individual and entities other than Defendants, does so only to the extent that such persons or entities are acting on behalf of or in privity with Defendants and to claims arising from their activities as such"); *Souffrant v. 14-15 Mertens Place Corp.*, No. 19-CIV.-05482 (BCM), 2020 WL 1166231, at *3 (S.D.N.Y. Mar. 11, 2020) (approving agreement when modified to ensure releases extended only to those acting on behalf of or in privity with the parties and was limited to claims arising from actions taken in such capacities); *Khan v. Young Adult Inst., Inc.,* No. 18-CIV.-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("General releases are permissible in FLSA settlements where plaintiff is no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual."); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CIV.-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("[T]here is nothing inherently unfair about a release of claims in an FLSA settlement"). As such, this provision should not result in a finding that the agreement is unfair or unreasonable.

For these reasons, the parties respectfully submit that the Settlement Agreement is fair and reasonable and should be approved. Thank you for your consideration in this matter.

Respectfully submitted,

__*/s/ Jose Cristobal Gutierrez*__
Attorney for Plaintiff

CC: All parties, via ECF.

---

[3] There are costs and attorney's fees associated with the agreement settling Ms. Calderon's discrimination claims and the relevant documents supporting costs and fees will be submitted with that agreement, under seal.